IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
LESTER V. GILL,                 )
                                )
           Plaintiff,           )
                                )
     v.                         )    1:10CV871
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner of Social   )
Security,[1]                    )
                                )
           Defendant.           )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Lester V. Gill, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The Court has before it the certified administrative record and the parties have filed cross-motions for judgment (Docket Entries 11, 16). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, resulting in her substitution for Michael J. Astrue as Defendant in this suit, by operation of Federal Rule of Civil Procedure 25(d).

**PROCEDURAL HISTORY**

Plaintiff applied for DIB and SSI. (Tr. 69-73.) Upon denial of the applications initially (Tr. 33, 47-51) and on reconsideration (Tr. 32, 43-45), he requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 40). Plaintiff and his attorney attended the hearing (Tr. 241-53) and the ALJ thereafter ruled Plaintiff not disabled under the Act. (Tr. 13-29.) The Appeals Council rejected Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review. (Tr. 4-10.)

In making that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through June 30, 2011.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since June 15, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. [Plaintiff] has the following severe impairments: cervical and lumbar disc disease and carpal tunnel syndrome (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual

functional capacity to perform medium work in jobs that do not require[] working at unprotected heights.

(Tr. 20-21.)

In light of the findings regarding residual functional capacity ("RFC"), the ALJ determined that Plaintiff could perform his past relevant work ("PRW") as a forklift operator as Plaintiff actually had performed such work. (Tr. 28.) Accordingly, the ALJ decided that Plaintiff had not been under a "disability," as defined in the Act, at any time from June 15, 2006, through the date of the ALJ's decision. (Id.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based

upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting that issue, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]  "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Hall, 658 F.2d at 264.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial

---

[2] "The Social Security Act comprises two disability benefits programs.  The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed.  The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points forecloses a disability ruling and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and

6

whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## **Assignments of Error**

In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 15, 2006, the alleged onset date. (Tr. 21.) At step two, he further determined that Plaintiff

---

continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

7

suffered from three severe impairments: cervical and lumbar disc disease and carpal tunnel syndrome ("CTS"). (Id.) The ALJ found at the third and fourth steps that these impairments did not meet any listings and limited Plaintiff to medium work with restrictions which did not preclude him from returning to his past relevant work ("PRW") as Plaintiff actually performed it. (Tr. 21-28.)

Plaintiff argues, however, that substantial evidence fails to support the Commissioner's findings at step four and/or that the ALJ incorrectly applied the law. (Docket Entry 12 at 3-8.) Specifically, Plaintiff asserts that the ALJ erred by failing to include in the RFC assessment (1) certain limitations identified by consultative examiner Dr. Mihir Patel (id. at 4-7); and (2) any limitations on account of Plaintiff's "severe cervical disc disease and CTS" (id. at 7-8). Defendant contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled. (Docket Entry 17 at 3-9.)

**1.   Dr. Mihir Patel's Consultative Examination**

Plaintiff first claims that the ALJ erred at step four by failing to include in the RFC determination certain limitations identified by consultative examiner Dr. Patel. (Docket Entry 12 at 4-7; see also Tr. 221-31.) Specifically, Plaintiff asserts that the ALJ "claim[ed] to have credited the opinion of Dr. Patel," but failed to include in the RFC Dr. Patel's limitations to two hours

8

of standing or walking in an eight-hour day, occasional handling and fingering, occasional (right hand) and frequent (left hand) reaching, and occasional motor vehicle operation. (Docket Entry 12 at 5-6; see also Tr. 227, 228, 230.)[6] Further, citing 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2),[7] Social Security Ruling 96-8p, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 ("SSR 96-8p"), Social Security Ruling 96-5p, Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL 374183 ("SSR 96-5p"), and Gordon v. Schweiker, 725 F.2d 231 (4th Cir. 1984), for the position that the ALJ must "provide good reasons for the weight given to a medical source's opinions" and must "explain his reasons for rejecting the probative evidence that he did not accept," Plaintiff describes as "legal error [the ALJ's] having failed to explain his reasons for rejecting the opinion of Dr. Patel [regarding the foregoing limitations]." (Docket Entry 12 at 4-6.) Finally, Plaintiff contends that the ALJ's failure to adopt all of Dr. Patel's limitations has significance, because the

---

[6] The Commissioner has adopted the Dictionary of Occupational Titles' definitions of "frequent" and "occasional." See 20 C.F.R. §§ 404.1567, 416.967. "Frequent" means the activity or condition exists from one-third up to two-thirds of an eight-hour work day and "occasional" from very little up to one third of an eight-hour work day. Dictionary of Occupational Titles, App'x C, § IV.c (4th ed. rev. 1991).

[7] Effective March 26, 2012, a regulatory change recodified the treating physician rule as 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), but did not impact the substantive language of the rule. See 77 Fed. Reg. 10651–10657 (Feb. 23, 2012). Given that all material events in this action precede this non-substantive regulatory change, the undersigned will use the pre-March 26, 2012 citations when referencing the treating physician rule.

9

physical demands of the forklift operator position in the Dictionary of Occupational Titles ("DOT") exceed Dr. Patel's limitations. (Id. at 5-6.) Plaintiff's arguments lack merit.

As an initial matter, contrary to Plaintiff's allegations, the ALJ did not "claim[] to . . . credit[] the opinion of Dr. Patel" in his decision. (See id. at 5.) At most, after summarizing Dr. Patel's findings (see Tr. 26), the ALJ credited Dr. Patel's opinion that Plaintiff could lift and carry up to 100 pounds: "Taking into consideration the findings and conclusions of Dr. Patel who felt that [Plaintiff] was capable of lifting and carrying up to 100 pounds[,] the undersigned finds that [Plaintiff] is at least capable of medium work in jobs that do not require working at heights" (Tr. 27; see also Tr. 226). Thus, although the ALJ took Dr. Patel's findings "into consideration," the ALJ did not adopt or credit all of Dr. Patel's findings. (Tr. 27.)[8] The Commissioner's regulations do not require the ALJ to either "rely entirely on a particular physician's opinion" or not at all. Schmidt v. Astrue, 496 F.3d 833, 845 (7th Cir. 2007). Rather, the ALJ may "piece together the relevant medical facts from the findings and opinions of multiple physicians." Evangelista v. Secretary of Health & Human Servs., 826 F.3d 136, 144 (1st Cir. 1987). Accordingly, even if the ALJ credited Dr. Patel's finding that Plaintiff could lift

---

[8] Arguably, the ALJ did not even adopt Dr. Patel's finding that Plaintiff could lift and carry up to 100 pounds, as the ALJ capped Plaintiff's maximum lifting/carrying weight at 50 pounds (medium work). (Tr. 21, 27.)

10

and carry up to 100 pounds, he did not err merely by failing to adopt Dr. Patel's remaining findings.

Nor does the nature of the ALJ's explanation for that decision require remand. In that regard, Plaintiff correctly notes that both SSR 96-8p and SSR 96-5p contain language which requires an ALJ to explain why he or she did not adopt a medical source's opinion. See SSR 96-8p at *7 (noting that, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted"); SSR 96-5p at *5 (providing that ALJs "must weigh medical source statements . . . [and] provid[e] appropriate explanations for accepting or rejecting such opinions").[9] Similarly, Plaintiff accurately cites Gordon for its statement that a reviewing court generally "cannot determine if findings are supported by substantial evidence unless the [Commissioner] explicitly indicates the weight given to all of the relevant evidence." Gordon, 725 F.2d at 235. However, "[a]s a general rule, [courts also] have held that an ALJ's failure to adequately explain his factual findings is not a sufficient reason for setting aside an administrative finding where the record

---

[9] Plaintiff incorrectly relies on 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) for the proposition that the ALJ must "provide good reasons for the weight given to [Dr. Patel]'s opinions" and must "explain his reasons for rejecting the probative evidence that he did not accept." (Docket Entry 12 at 4.) The cited regulations govern the opinions of treating physicians, not one-time consultative examiners such as Dr. Patel, and require that the ALJ "always give good reasons in [his] . . . decision for the weight [he] give[s to a] treating source's opinion." 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (emphasis added).

11

supports the overall determination." Scott ex rel. Scott v. Astrue, 529 F.3d 818, 822 (8th Cir. 2008) (internal citations and quotation marks omitted); see also Stewart v. Apfel, No. 98-1785, 182 F.3d 909 (table), 1999 WL 485862, at *3-5 (4th Cir. July 12, 1999) (unpublished) (discussing Gordon and concluding that, although "the ALJ's report completely fail[ed] to mention the evaluation by [a medical source and the ALJ] . . . was not as thorough as he could have been," the district court properly concluded that substantial evidence supported the ALJ's decision and the ALJ adequately "explained why he came to the conclusion that he did"); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (holding that "[n]o principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); Fitzgerald v. Colvin, No. 2:12CV78D, 2013 WL 6178563, at *5 (E.D.N.C. Nov. 25, 2013) (unpublished) ("To the extent [the plaintiff] alleges that the ALJ should have more thoroughly explained the weight given to [certain medical source] opinions, a district court must affirm the decision of an ALJ who 'was not as thorough as he could have been' if it finds, after reviewing the record as a whole, that substantial evidence supports the decision." (quoting Stewart)).

Instead, the critical inquiry becomes whether the ALJ has built "an accurate and logical bridge from the evidence to [the] conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). Here, the ALJ's overall analysis provides "an accurate and logical bridge" between the evidence of record and the ALJ's implicit decision not to adopt Dr. Patel's limitations on handling, fingering, reaching, standing, walking, and motor vehicle operation. First, the ALJ noted that, as a general matter, Plaintiff took only ibuprofen for pain, refused all other treatment options offered by his medical providers, often "exaggerated his symptoms," and did not demonstrate "good effort during tests and examinations." (Tr. 26-27; see also Tr. 145, 146, 149, 154, 160, 163-64, 166, 207, 210-11, 223, 235.) The ALJ further observed that qualifying for disability benefits constituted Plaintiff's "primary motivation," which might "explain his lack of effort." (Tr. 26; see also Tr. 154-55, 163, 210.)

With regard to handling, fingering and reaching, the ALJ stated that, although Plaintiff "complained of constant numbness in his hands," tests did not substantiate this numbness and "grip strength testing over time ha[d] been normal or near normal." (Tr. 26-27; see also Tr. 139, 146, 150, 160, 236, 247.) As to standing and walking, the ALJ emphasized that Plaintiff's cervical and lumbar disc disease did not result in any radicular symptoms and

13

that he did not require a cane to ambulate. (Tr. 26-27; see also Tr. 132-33, 221-23.) The ALJ further found that the record did not establish any significant knee or breathing problems and that Plaintiff's hypertension had not yet resulted in any significant end organ damage other than some mild renal insufficiency. (Tr. 27; see also Tr. 132-33, 142, 177-93, 212, 217, 222.)

Finally, although the ALJ did not specifically address Plaintiff's ability to drive, any such error caused Plaintiff no prejudice. Despite the fact that the Medical Source Statement form Dr. Patel completed requested that he support his conclusion regarding Plaintiff's ability to operate a motor vehicle with "particular medical or clinical findings," Dr. Patel did not substantiate that limitation with any findings. (Tr. 230.) In fact, Dr. Patel noted in his report that Plaintiff gave "questionable" effort on neurologic testing and "seemed not to be trying to perform the tasks that w[ere] asked" (Tr. 223), which undermines the reliability of any limitations found by Dr. Patel. Moreover, no other medical source of record placed any limitations on Plaintiff's ability to operate a motor vehicle.

Under these circumstances, the record provides substantial evidence to support the ALJ's decision not to adopt Dr. Patel's limitations on handling, fingering, reaching, standing, walking, and motor vehicle operation. Moreover, the record reflects that

14

the ALJ "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSR[] . . . 96-5p . . . ." (Tr. 21; see also Tr. 19 (taking note of SSR 96-8p).) That fact, coupled with the explicit findings and relevant, logical analysis by the ALJ set forth above, renders harmless any technical noncompliance with the explanation directives in SSR 96-5p and SSR 96-8p. See, e.g., Lee v. Colvin, No. 12-2259-SAC, 2013 WL 4549211, at *4 (D. Kan. Aug. 28, 2013) (unpublished) (following established practice of "look[ing] to the substance of the ALJ's decision to see whether the medical opinions had been properly evaluated . . . [and] tak[ing] [ALJ] at her word . . . [as to her statement that she] also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSR[] . . . 96-5p" in concluding that the plaintiff "ha[d] not shown that any error was detrimental to her position or that a remand . . . could conceivably produce a different result" (internal block quotation formatting and quotation marks omitted)); Tenhove v. Colvin, 927 F. Supp. 2d 557, 571 n.7 (E.D. Wis. 2013) ("Violations of SSR 96-8p (or other legal standards) may be deemed harmless."); Williams v. Astrue, C/A No. 0:09-1971, 2010 WL 6297625, at *5 (D.S.C. Nov. 3, 2010) (unpublished) ("[E]ven assuming that the explanation of the RFC determination in the ALJ's written decision did not comply with SSR 96-8p, the court finds that [the plaintiff] cannot demonstrate

15

prejudice and that any error is harmless."), recommendation adopted, 2011 WL 1113502 (D.S.C. Mar. 28, 2011) (unpublished).

Because substantial evidence supports the ALJ's decision not to adopt the limitations in question, any conflict between those limitations and the DOT's forklift operator position description provides no basis for remand. Additionally, at step four, an ALJ can find a claimant not disabled by determining that the claimant can perform PRW either as actually previously performed by the claimant or as generally performed in the national economy. 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). Here, the ALJ concluded that Plaintiff could return to his PRW as a forklift operator as Plaintiff actually had performed such work and, thus, the DOT listing for forklift operator lacks relevance. (Tr. 28.) Plaintiff indicated that his work as a forklift operator required him to lift up to 20 pounds, stand for up to four hours in an eight-hour day, walk for up to four hours in an eight-hour day, and sit for up to four hours in an eight-hour day. (Tr. 79-80.) An RFC for medium work[10] not involving unprotected heights would encompass such work-related demands.

---

[10] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). Moreover, "[a] full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." SSR 83-10, 1983 WL 31251, at *6.

16

In sum, the ALJ did not reversibly err either in evaluating Dr. Patel's opinions or determining that Plaintiff retained the RFC to perform his PRW as he actually had performed it.

## 2. Limitations from Cervical Disc Disease and CTS

Next, Plaintiff contends the ALJ erred by failing to incorporate into the RFC assessment any limitations from cervical disc disease and CTS. (Docket Entry 12 at 7-8.) Specifically, Plaintiff maintains that the ALJ should have included limitations in handling, fingering, and reaching, and that such limitations would have precluded a finding that Plaintiff could return to his PRW as a forklift operator, thereby necessitating the testimony of a vocational expert. (Id.) These allegations lack merit.

As discussed in connection with the previous assignment of error, substantial evidence supports the ALJ's decision not to adopt Dr. Patel's limitations on handling, fingering, and reaching. Moreover, although Plaintiff's treating physician, Robert McConville, opined that Plaintiff's lower back pain and CTS limited his ability to handle and feel (without specifying the degree of limitation) (Tr. 173), the ALJ gave that opinion "little weight" (Tr. 27). In so doing, the ALJ correctly noted that Dr. McConville's "assessment contain[ed] no objective findings to support the limitations he imposed" and that the treatment notes did not "contain any objective medical findings other than

17

recording [Plaintiff]'s vital signs." (Id.) Given those deficiencies in Dr. McConville's report, as well as the substantial evidence contradicting any limitations on Plaintiff's handling, fingering and reaching, such as exaggeration of symptoms, failure to give effort during testing, and testing that conflicted with his reported problems with his hands (Tr. 139, 145, 146, 149, 150, 154, 160, 163, 164, 166, 207, 210, 211, 223, 236, 247), the ALJ did not err by failing to credit Dr. McConville's non-specific reference to limitations in this area. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (assigning controlling weight only to treating source opinions "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in [the] case record"). Finally, although the ALJ credited the state agency physicians' opinions that Plaintiff could perform medium work, the ALJ did not credit their additional limitation of frequent handling. (Tr. 27-28; see also Tr. 194, 196-203.) Again, the ALJ may accept portions of a medical source's findings while rejecting others, see Schmidt, 496 F.3d at 845; Evangelista, 826 F.2d at 144, and, as with Dr. Patel's limitations, substantial evidence supports the ALJ's decision not to adopt the state agency physicians' handling limitation.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for

Judgment on the Pleadings (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 16) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 22, 2014